UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY H. SCHLATTER, ROBERT C. GUST, MICHAEL I. FRIESS and ALLEN R. GOLDSTONE,<br><br>                   Plaintiffs,<br><br>v.<br><br>CHINA PRECISION STEEL INC., as Successor-in-Interest to ORALABS HOLDING CORP.,<br><br>                   Defendant. | Civil Action No. 1:13-cv-02793-ALC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE DEFAULT**

**COUGHLIN DUFFY LLP**
350 Mt. Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
(973) 267-0058
*Attorneys for Defendant,*
*China Precision Steel Inc.,*
*As Successor-in-Interest to*
*OraLabs Holding Corp.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL ARGUMENT ............................................................................................................... 7

    UNDER THE APPLICABLE STANDARD OF REVIEW, DEFAULT
    SHOULD BE VACATED AND DEFENDANT PERMITTED TO FILE
    AN ANSWER OR OTHERWISE MOVE WITH RESPECT TO PLAINTIFF'S
    COMPLAINT ................................................................................................................ 7

        A.   Standard of Review ................................................................................................ 7

        B.   Willfulness of Default ............................................................................................ 7

        C.   Prejudice to Plaintiff ............................................................................................... 8

        D.   Meritorious Defense ............................................................................................... 9

CONCLUSION ........................................................................................................................ 12

Defendant China Precision Steel Inc., as successor-in-interest to OraLabs Holding Corp., ("CPS") by and through its undersigned counsel, respectfully submit this Memorandum of Law in support of its Motion to Vacate Default and Allow Defendant to Answer or Otherwise Move with respect to the Complaint of Plaintiffs Gary H. Schlatter, Robert C. Gust, Michael I. Friess and Allen R. Goldstone (hereinafter, collectively, "Directors") pursuant to F.R.Civ.P. 55(c) and award such other and further relief as is just and appropriate.

## PRELIMINARY STATEMENT

China Precision Steel, Inc. is a publically traded company, formerly known as OraLabs Holding Corp. ("OLHC").  In its most basic sense, the present day CPS is the result of a 2006 "reverse merger" between publically traded OLHC and closely-held Partner Success Holdings Limited (PSHL).  Through the reverse merger, PSHL obtained publically traded status through the vehicle of OLHC, and the Directors were able to take private OraLabs, Inc.[1] - the then wholly owned subsidiary of OLHC and only real asset of OLHC. Prior to the merger, PSHL, and its group of companies, were in the business of manufacturing precision cold rolled steel products. After the merger, CPS remained in that business.  At no time did PSHL / CPS engage in the creation, manufacture or sale of the cosmetic products of OraLabs, Inc., nor did any of the Directors "stay on" with CPS.

The Directors seek to require CPS to defend, indemnify and reimburse them in connection with an action brought by Haining Zhang ("Zhang") and China Venture Partners, Inc. ("CVP") (Case No. 1:12-cv-01793-ALC) (hereinafter, the "Zhang Action"). In the Zhang action, the plaintiffs (Zhang and CVP) seek damages arising out of an October 2003 "Non-Disclosure / Non-Circumvention Agreement."  The Officers, Directors, and shareholders of present-day CPS

---

[1] It is believed that OraLabs, Inc. is a highly profitable business involved in licensing, *inter alia*, lip-balm, sunscreen and hand sanitizers.  The Directors wished to take OraLabs, Inc. private in order to avoid public scrutiny into the financials of OraLabs, Inc.

1

had no involvement with that agreement. That agreement was entered into by one or more of the Directors as part of their efforts to strip OraLabs Inc. from OLHC and take that entity private for their own benefit.

In the Zhang Action, plaintiffs assert that the Directors knowingly and intentionally engaged in wrongful conduct under theories of RICO (Comp. para. 186); Fraudulent Misrepresentation (Comp. para. 218); Misappropriation of Trade Secrets (Comp. para. 226); Misappropriation of Confidential Information (Comp. para. 234); Fraudulent Representation (Comp. para. 238); and, Civil Conspiracy (Comp. para. 244). *See* Zhang Action Complaint, Ex. "A" to the Declaration of John M. Deitch ("Deitch Decl."). The Zhang Action was dismissed in its entirety based upon the statute of limitations and failure to state a claim. That dismissal is currently on appeal to the Second Circuit. (Case No. 13-1532).

The Directors, through the instant action, now seek to require CPS to indemnify them in connection with the Zhang Action, relying upon the Second Amended and Restated Bylaws of OraLabs Holding Corp. ("Bylaws").

Default has been entered against CPS. However, CPS's failure to timely respond to the Complaint was the result of inadvertent error. Vacating default and permitting CPS to respond to the Directors' Complaint will not cause prejudice to the plaintiffs. CPS should be permitted to put forth its valid defenses to the Directors' Complaint.

**FACTUAL AND PROCEURAL BACKGROUND**

*A. The Zhang Action & the Directors' Request for Indemnification*

The Zhang Action was initially filed on or about March 9, 2012. Plaintiffs Zhang and CVP filed an Amended Complaint on or about June 29, 2012. ("Deitch Decl. at Ex. "A"). The Zhang Action alleges breach of contract and fraud arising from consulting work performed for

the defendants. Specifically as to the Directors, Zhang & CVP allege that Messrs. Schlatter, Goldstone and Friess made false representations and fraudulent misrepresentations that were relied upon by Zhang and CVP (s*ee* Amended Complaint, Ex. "A", at ¶¶ 202, 219-222, 239-243). Plaintiffs allege that the Directors were unjustly enriched due to their actions. (s*ee* Amended Complaint, Ex. "A", at ¶ 237).

Following receipt of the Complaint in the Zhang Action, the Directors requested that CPS indemnify each of them. *See* Exhibit "B" to the Deitch Decl.

The Directors' correspondence alleges that the relationship between them and CPS is governed by the Second Amended and Restated Bylaws of OraLabs Holding Corp. *See* Exhibit "C" to the Deitch Decl. Article VI of the Bylaws, captioned "Indemnification of Certain Persons," provides the terms and conditions for indemnification of directors. Specifically, Article VI, Section 2, "Indemnification for Liability," provides as follows:

> Section 2    Indemnification for Liability
>
> a.    Except as provided in paragraph d. of this Section 2, the corporation shall indemnify against liability incurred in any proceeding any person made a party to the proceeding because he or she is or was a director or officer if (i), he or she conducted himself or herself in good faith; (ii) he or she reasonably believed: (a) in the case of conduct in his or her official capacity with the corporation, that his or her conduct was in the corporation's best interests or (b) in all other cases, that his or her conduct was at least not opposed to the corporation's best interests; and (iii) in the case of any criminal proceeding, he or she had no reasonable cause to believe his or her conduct was unlawful.
>
> …
>
> d.    The corporation may not indemnify a director or officer under this Section 2 either (i) in connection with a proceeding by or in the right of the corporation in which the director or officer was adjudged liable to the corporation; or (ii) in connection with any proceeding charging improper personal benefit to the director or officer, whether or not involving action in his or her official capacity, in which he or she was adjudged liable on the basis that personal benefit was improperly received by him or her.

Article VI, Section 4 of the Bylaws, captioned "Limitation on Indemnification," provides as follows:

> Section 4    Limitation on Indemnification
>
> a.    The corporation may not indemnify a director or officer under Section 2 of this Article unless authorized in the specific case after a determination has been made that indemnification of the director or officer is permissible in the circumstances because he or she has met the standard of conduct set forth in paragraph a. of Section 2 of this Article.
>
> b.    The determination required to be made by paragraph a of this Section 4 shall be made (i) by the board of directors by a majority vote of the quorum, which quorum shall consist of directors not parties to the proceeding;…

*See* Bylaws, Exhibit "C" to the Deitch Decl.

Former counsel for CPS acknowledged receipt of the Directors' correspondence on April 18, 2012, and indicated that based on the facts known at that time, CPS was unable to determine whether the requested indemnification was appropriate and reserved its right to revisit the issue of indemnification at a later stage of the litigation. *See* April 18, 2012 correspondence, Exhibit "D" to the Deitch Decl. In June 2012, the Directors made an additional request for indemnification and advancement and provided what they deemed to be "further support" for their request. *See* June 25, 2012 correspondence, Exhibit "E" to the Deitch Decl.

After the filing of Plaintiffs' initial Complaint, CPS investigated the issues raised by the Zhang Action, including the allegations asserted by Zhang / CVP and the potential validity of the Directors' request for indemnification and advancement. A motion to dismiss the Zhang Action for failure to state a claim was filed by OraLabs Holding Corp. and CPS on June 29, 2012 (Case No. 12-1793, Doc. No. 63). The Directors also moved to dismiss the Zhang / CVP Complaint at that time. In August 2012, Zhang / CVP filed an Omnibus Opposition to Defendants' Motions to Dismiss.

In Zhang/CVP's Opposition, Zhang alleged that all of his interactions and negotiations in connection with the alleged transaction and agreement were with the Directors. *See* Plaintiffs' Omnibus Opposition in Opposition to Defendants' Motions to Dismiss, Case No. 12-1793, Doc. No. 95. Zhang further alleged that those individuals knowingly and intentionally violated a procurement contract with regard to the reverse merger at issue. *Id.*

Following receipt of the Directors' motion for indemnification in the Zhang Action, CPS' Board of Directors again considered the Directors' request, in light of the information revealed by the parties' filings. Based upon the Board's review of the relevant documents, the Board determined that the indemnification and advancement sought by the Directors was not appropriate or required. In addition, the Board authorized the assertion of claims over and against the Directors at the appropriate stage of the proceeding. *See* Resolution - Unanimous Written Consent in Lieu of a Meeting of the Board of Directors of China Precision Steel, Inc., dated February 6, 2013, (hereinafter "Resolution") attached as Ex. "F" to the Deitch Decl. The Board rejected the claims for indemnification and advancement made by each of the individual Directors. As set forth in the Bylaws, the Board is entitled to make this determination.

On March 13, 2013 the Court granted the defendants' motion to dismiss the Zhang Action (*see* Doc. No. 118 for Case No. 12-1793). Following a telephone conference with the Court on April 16, 2013, the Court declined to exercise supplemental jurisdiction to determine the Directors' motion for indemnification and advancement. (*See* Docket Entry of 4/16/2013 for Case No. 12-1793).

### B.     *The Current Complaint and Entry of Default*

Plaintiff filed the instant action on or about April 26, 2013. Plaintiff appears to have served the summons and complaint on CPS' Registered Agent, Corporation Service Company in Wilmington, Delaware on May 2, 2013. Plaintiffs did not provide a copy of the summons and complaint to CPS' current counsel, despite having participated in a telephone conference with the Court and counsel concerning the indemnification issue just ten (10) days prior.  Further, after the complaint was not responded to, counsel for the plaintiff never contacted counsel for CPS to inquire as to the status of the response.  The apparent intent of plaintiff was to seek a litigation advantage by remaining silent.

An investigation into why CPS did not receive notice has revealed that, on May 8, 2013, due to an incorrect email address on record, the email containing the Notice of Service of Process sent from the Corporation Service Company ("CSC"), agent for CPS, to the appropriate contact at CPS (who is in Hong Kong) resulted in a "bounce-back" notice.  When CPS' agent attempted to contact outside corporate counsel for CPS to advise him of the bounce back, that e-mail was directed into a spam filter and remained unopened until the instant investigation on July 2, 2013 when CPS' counsel received the motion for default judgment.  In brief, through no fault of its own, CPS did not receive notice of the lawsuit though CSC.  The first notice of the instant action was received by the undersigned, and consisted of plaintiffs' motion for a default judgment in an envelope without a covering letter. The undersigned wrote to counsel for the plaintiff seeking the voluntary vacature of the default, a request that was rejected – thereby necessitating the instant motion to vacate default and answer or otherwise move with respect to plaintiffs' complaint.

6

## LEGAL ARGUMENT

## UNDER THE APPLICABLE STANDARD OF REVIEW, DEFAULT SHOULD BE VACATED AND DEFENDANT PERMITTED TO FILE AN ANSWER OR OTHERWISE MOVE WITH RESPECT TO PLAINTIFFS' COMPLAINT.

*A.*     *Standard of Review*

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he Court may set aside an entry of default for good cause." While the Rule does not define "good cause," the Second Circuit has established that three criteria must be assessed: (1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  These criteria should be applied in the context of the Second Circuit's general preference "that litigation disputes be resolved on the merits, not on default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). Moreover, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

As set forth in detail below, defendant easily meets all criteria for vacating default. However, should the Court not agree entirely, the failure to meet one factor will not preclude vacature of the default. *See I.L.G.W.U. Nat. Re. Fund v. Meredith Grey, Inc.*, 986 F.Supp. 816, 823 (S.D.N.Y. 1997) (noting that the factor of willfulness "is relevant but not dispositive.")

*B.*     *Willfulness of Default*

The Second Circuit has interpreted willfulness in the context of default to refer "to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d

7

Cir. 1998). The failure to respond must be from "the result of a shortcoming more culpable than negligence or even gross negligence." *Id.*

Here, defendant CPS did not willfully ignore plaintiffs' complaint. CPS' failure to timely respond to plaintiffs' complaint was the result of an administrative oversight by CPS' agent for service of process, which has since been remedied. CPS did not deliberately fail to respond, as it has responded to the directors' requests for indemnification in both correspondence and litigation for over a year. The conduct of CPS, its agent and its counsel flowed from an administrative mistake, and does not rise to the level of "more than merely negligent or careless." Courts routinely vacate default where a defendant's failure to respond is based upon a mistake. *See*, *e.g.*, *American Alliance Ins. Co., Ltd. V. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (finding that a default due to a filing mistake by the defendant's in-house counsel's clerk who assumed the case had been assigned and whose misfiling went unnoticed for two months was not willful, deliberate or evidence of bad faith.)

What is significant, and should not be lost on the Court, is the fact that counsel for plaintiffs was aware of this office's involvement in the underlying Zhang Action and appeal – and never sent notices of the instant action to the undersigned – until absolutely required by Local Rule 55.2(c). This kind of gamesmanship should not be rewarded.

C.      *Prejudice to Plaintiff*

In order to demonstrate the requisite level of prejudice, a plaintiff must show that any prejudice resulting form the defendant's default cannot be rectified by the Court in another manner were the default to be vacated. *Murray Engineering, P.C. v. Windermere Properties LLC*, 12-cv-0052, 2013 U.S.Dist. LEXIS 61877, at *15 (S.D.N.Y. Apr. 30, 2013) (citing 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:*

8

*Civl § 2699* (3d ed 2010). Moreover, it is undisputed that "delay alone cannot be the basis for a claim of prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties in discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d. Cir. 1983) (internal citations omitted).

Here, there is absolutely no prejudice to plaintiffs if the default is vacated. There will be no loss of evidence or difficulties in discovery or other proceedings. Other than surreptitiously filing the Complaint, plaintiffs have not taken any other steps in this action. Vacating default and permitting CPS to respond to plaintiffs' complaint will not delay these proceedings, where CPS is the only defendant, or cause any prejudice to plaintiffs.

D.   *Meritorious Defense*

To show a meritorious defense, a defendant "need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (citations omitted).

CPS believes it has significant defenses to plaintiffs' complaint. The language of the by-laws makes clear that the obligation to indemnify current or former directors is not mandatory or absolute. Instead, it is contingent on the conduct of the individual as alleged in the Complaint and subject to the Board's review and consideration.

The Complaint and Omnibus Opposition to Defendants' Motions to Dismiss in the Zhang Action assert claims against the Directors based upon their individual, intentional, actions, including their alleged false representations and fraudulent misrepresentations.  As such, any potential indemnification owed to the Directors is permissive, and can be appropriately denied by the corporation.  *See Equitext Inc. v. Ungar,* 60 P. 3d 746, 751 (Colo. 2002) *citing, Biondi v. Beekman Hill House Apt. Corp.*, 94 N.Y.2d 659, 667 (Ct. App. N.Y. 2000) ("Because the

underlying . . . judgment establishes that [defendant's] acts were committed in bad faith, [defendant] is not entitled to indemnification and cannot relitigate the good faith versus bad faith issue here . . . ."); *see also In re Landmark Land Co.*, 76 F.3d 553, 565 (4th Cir. 1996) ("An agent who has intentionally participated in illegal activity or wrongful conduct against third persons cannot be said to have acted in good faith, even if the conduct benefits the corporation."); *McLean v. Alexander*, 449 F. Supp. 1251 (D. Del. 1978) (indemnity under § 145 is subject to the general public policy against indemnifying a party for his intentional wrongdoing), *rev'd on other grounds*, 599 F.2d 1190 (3d Cir. 1979); *cf. People v. Kazmierski*, 25 P.3d 1207, 1214 (Colo. 2001) ("False statements, either intentionally or recklessly made, are the antithesis of good faith."); *Golden Press, Inc. v. Rylands*, 124 Colo. 122, 235 P.2d 592 (1951) ("willful and intentional" actions are distinct from those taken in good faith).[2]

In addition, while the actions of the Directors may have been of great financial benefit to themselves individually, and perhaps to Ora Labs, Inc. (their now closely held company), their actions were of no benefit to OLHC and violated the fiduciary obligation the Directors owed to that organization. Indeed, in their pursuit of individual wealth, they stripped OLHC of its only asset, took that asset for their own use, and left OLHC a vacant shell.

Last, Mr. Schlatter, and upon information and belief, the remaining Directors, failed to disclose their prior dealings with Zhang to PHSL, and made affirmative representations that there were no contingent liabilities outstanding. Had they been truthful in their dealings with PHSL pre-acquisition, PHSL would have required the appropriate conditions upon the sale to insulate itself from any potential claims by Zhang and the Directors, and would thereby have avoided its own costs of litigation in the Zhang matter as well the costs it is incurring here. Accordingly,

---

[2] We respectfully submit that, here, any judicial determination as to indemnification is premature given the questions of fact which surround the Director Defendant's actions.

PHSL / CPS will be asserting claims against the individual Directors, as appropriate, based upon their conduct. Under Section 2.d. of the by-laws these claims will preclude indemnity.

CPS also has an affirmative claims against Mr. Schlatter, OraLabs, Inc. and O.H. Sub Corp. based upon their material misrepresentations and the breach of Article V of the Stock Exchange Agreement dated March 31, 2006. (Exhibit "G" to Deitch Decl.). In particular, it was affirmatively represented and warranted that there were no material or contingent liabilities outstanding (Section 5.9); that no material facts were omitted from the information provided to PSHL (Section 5.10); that there was no agreement to pay any material obligation or liability (other than those listed on the most recent OraLabs balance sheet)(Section 5.12(c)); and, that they have not employed "any broker or finder", nor will they incur "directly or indirectly" any broker's or finder's fees, commissions or expenses. (Section 5.19). The extent to which the other Directors were involved in these material misrepresentations will also be pursued.

CPS will also seek indemnification from OraLabs, Inc. and O.H.Sub Corp. for the entirety of its costs and expenses incurred in responding to the Zhang litigation pursuant to Article VIII of the Exchange Agreement. *See* Exhibit "G" to Deitch Decl.

It is therefore respectfully submitted that CPS should be permitted to raise these defenses / claims in response to plaintiffs' Complaint, and default should be vacated.

**CONCLUSION**

For all of the foregoing reasons, defendant China Precision Steel Inc., as Successor-In-Interest to OraLabs Holding Corp, respectfully requests that its motion to vacate default be granted, and that it be permitted fifteen (15) days to answer or otherwise move with respect to Plaintiff's Complaint.

Dated: Morristown, New Jersey
July 24, 2013

Respectfully submitted,

By:  /s/ *John M. Deitch*
John M. Deitch, Esq.
**COUGHLIN DUFFY LLP**
350 Mt. Kemble Ave., P.O. Box 1917
Morristown, New Jersey 07962
(973) 267-0058
*Attorneys for Defendant,*
*China Precision Steel Inc.,*
*As Successor-in-Interest to*
*OraLabs Holding Corp.*