UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY H. SCHLATTER, ROBERT C. GUST, MICHAEL I. FRIESS and ALLEN R. GOLDSTONE,<br><br>Plaintiffs,<br><br>v.<br><br>CHINA PRECISION STEEL INC., as Successor-in-Interest to ORALABS HOLDING CORP.,<br><br>Defendant. | Civil Action No. 1:13-cv-02793-ALC |
| CHINA PRECISION STEEL INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>ORALABS INC. and O.H. SUB-CORP.,<br><br>Third-Party Defendants. | |
| **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION** | |

Defendant China Precision Steel Inc. ("CPS"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(1) and (2) and to award such other and further relief as is just and appropriate.

## PRELIMINARY STATEMENT

China Precision Steel, Inc. is a publically traded company, formerly known as OraLabs Holding Corp. ("OLHC"). In its most basic sense, the present day CPS is the result of a 2006 "reverse merger" between publically traded OLHC and closely-held Partner Success Holdings Limited (PSHL). Through the reverse merger, PSHL obtained publically traded status through the vehicle of OLHC, and the Plaintiffs here were able to take private OraLabs, Inc.[1] - the then wholly owned subsidiary of OLHC and only real asset of OLHC – to their personal benefit.

Prior to the merger, PSHL, and its group of companies, were in the business of manufacturing precision cold rolled steel products. After the merger, it remained in that business. At no time did PSHL / CPS engage in the creation, manufacture or sale of the cosmetic products of OraLabs, Inc.

Plaintiffs Gary S. Schlatter, Robert C. Gust, Michael Friess and Allen R. Goldstone allege that they were all individual directors of OLHC prior to the reverse merger and, as such are each entitled to have CPS defend and indemnify them against claims asserted against them personally in an action brought by Haining Zhang ("Zhang") and China Venture Partners, Inc. ("CVP") (Case No. 1:12-cv-01793-ALC) (hereinafter, the "Zhang Action").

In the Zhang action, the plaintiffs (Zhang and CVP) seek damages arising out of an October 2003 "Non-Disclosure / Non-Circumvention Agreement." As the reverse merger that is

---

[1] It is believed that OraLabs, Inc. is a highly profitable business involved in licensing, *inter alia*, lip-balm, sunscreen and hand sanitizers. The Directors wished to take OraLabs, Inc. private in order to avoid public scrutiny into the financials of OraLabs, Inc.

at the heart of the Zhang Action took place in 2006, the Officers, Directors, and shareholders of present-day CPS had no involvement with that agreement.

That agreement was apparently entered into by one or more of the Plaintiffs here in connection with their efforts to take OraLabs Inc. private to their personal benefit.

In the Zhang Action, plaintiffs assert that the instant Plaintiffs knowingly and intentionally engaged in wrongful conduct under theories of RICO (Comp. para. 186); Fraudulent Misrepresentation (Comp. para. 218); Misappropriation of Trade Secrets (Comp. para. 226); Misappropriation of Confidential Information (Comp. para. 234); Fraudulent Representation (Comp. para. 238); and, Civil Conspiracy (Comp. para. 244). *See* Complaint, Exhibit "A" to the Declaration of John M. Deitch ("Deitch Decl."). [2]

The action brought by Zhang and CVP has been dismissed in its entirety based upon the statute of limitations and failure to state a claim. That dismissal is currently on appeal to the Second Circuit and has been fully briefed. (Case No. 13-1532).

## PROCEURAL BACKGROUND

Plaintiffs filed the instant action on or about April 26, 2013. Plaintiffs moved for default on June 19, 2013, and default was entered by the Clerk on June 20, 2013. Plaintiffs' motion for entry of judgment by default was opposed and Defendant's motion to vacate default was granted on September 25, 2013.

The Court entered a Scheduling Order on October 22, 2013, which required the filing of a motion to dismiss by December 10, 2013. (*See* Docket entry dated 10/22/2013). Following a conference call with the Court on January 9, 2014, Defendant was permitted to withdraw its

---

[2] A copy of the Zhang Amended Complaint is attached as Exhibit "B" to the Deitch Declaration. Because it was referenced in the Complaint here, it is appropriate for the Court to consider in connection with the instant application.

initial motion to dismiss in order to supplement the instant memorandum to incorporate certain additional information learned through Plaintiffs' discovery responses.

Defendants now move to dismiss under F.R.Civ.P. 12(b)(1) and (2).

## ARGUMENT

## POINT I.

### PLAINTIFFS HAVE NOT ESTABLISHED THE REQUISITE AMOUNT IN CONTROVERSEY

Plaintiffs assert that this Court has subject matter jurisdiction based upon 28 U.S.C. 1332(a), diversity jurisdiction. No other basis for jurisdiction is alleged.

Defendant agrees that diversity is to be determined as of the time the complaint is filed. *See, e.g., Obstfeld v. Schwartz,* 621 F.Supp.2d 87 (S.D.N.Y. 2008) (*citing Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004)). Defendant also agrees that, based upon the allegations in the complaint at paragraphs 8 through 12, diversity of citizenship exists.[3]

However, Defendant challenges whether the requisite amount in controversy of $75,000 exists.

The four plaintiffs have alleged that "the Plaintiff Directors have incurred approximately $56,000 in reasonable defense expenses and costs, including attorney's fees, as of the date of this Complaint in defending against the Underlying Case." *See* Comp. at para 7. Plaintiffs also allege that "[t]hey will incur additional costs and expenses in excess of $20,000 in pursuing this action and in defending against the Appeal." *Id.*

In their discovery responses, Plaintiffs updated their claimed damages, and assert the following:

---

[3] Should this matter proceed, Defendant reserves its right to re-visit this issue in the event that discovery reveals facts different than those alleged by Plaintiffs regarding citizenship.

> Plaintiffs do not claim damages on a per Plaintiff basis. Each of the Plaintiffs are jointly and severally liable for the payment of attorneys fees and costs for the defense of the Zhang and prosecution of this case to recover attorneys fees and costs under the indemnity provision of the Bylaws of OraLab Holding Corp. The legal bills to date are $82,892.78.
>
> See, e.g., Plaintiff Gary Schlatter's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, at Interrogatory No. 8, attached as Exhibit "C" to the Deitch Decl.

Plaintiffs' assertions are jurisdictionally deficient for two reasons: 1) Plaintiffs have improperly aggregated their claimed damages; and, 2) Plaintiffs have not averred that they are personally responsible for the fees in question.

It is well established that it is plaintiffs who bear the burden of establishing the propriety of jurisdiction. *See, e.g.*, *Manney v. Leonardo*, 2013 U.S. Dist. LEXIS 117909 (EDNY; Feuerstein, J., 2013), *citing Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1421 (2d Cir. 1997):

> [T]he party invoking federal jurisdiction has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Gilman*, 104 F.3d at 1421 (alterations, quotations and citations omitted); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 304-05 (2d Cir. 1994) (accord); *Lupo v. Human Affairs International, Inc.*, 28 F.3d 269 (2d Cir. 1994) ("[T]he party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy.") "Where * * * jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." *United Food*, 30 F.3d at 305 (quotations, alteration and citation omitted).

It is also well established that plaintiffs who join together in a cause must each satisfy the amount in controversy requirement. *See Mehelenbacher, et al. v. Akzo Nobel Salt*, 216 F.3d 291, 296; 2000 U.S. App. LEXIS 14212 (2d Cir. 2000)(("The Supreme Court has long held that separate and distinct claims raised by different plaintiffs may not be aggregated to satisfy the jurisdictional amount in controversy"); s*ee also*, *Airlines Reporting Corp. v. S and N Travel, Inc.*,

*857 F.Supp. 1043, 1049 (E.D.N.Y. 1994)(*"plaintiffs may not aggregate their individual claims to reach the diversity jurisdiction threshold").

Here, the four plaintiffs, at most, claim $82,892.78 in past costs, and, based upon their complaint, approximately $20,000 in future damages. Plaintiffs' contention that they are each "jointly and severally" responsible is simply an attempt to maneuver around the jurisdictional threshold in order to avoid dismissal. In all likelihood, each plaintiff is paying retained counsel his own equal quarter share, or, perhaps more likely, the corporation, OraLabs Inc., is paying counsel's fees. Even doubling the anticipated future costs – a generous proposition given that the underlying appeal is fully briefed and submitted – would not yield a sum sufficient to meet this Court's jurisdictional threshold if spread evenly across the individual plaintiffs.

## POINT II.

### PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PLEADING JURISDICTION.

As said by this Court in *Tymoshenko v. Firtash*, 2013 U.S. Dist. LEXIS 43543, *5-*6 (S.D.N.Y. Mar. 26, 2013):

> On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, *i.e.*, by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted). A prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). District courts have "considerable procedural leeway" in deciding whether or not a plaintiff has made a prima facie showing of jurisdiction, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), but must construe all allegations "in the light most favorable to the plaintiff" and resolve all doubts in the

>plaintiff's favor, "notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

Plaintiffs have failed to plead any allegation of Defendant "doing business" in New York, and what Plaintiffs have pled confirms a lack of minimum contacts sufficient to establish jurisdiction.[4] *See* Comp. at para. 12. (Defendant is a Delaware Corporation with a principal place of business outside of New York).

Plaintiffs assert only conclusory statements on the issue of contacts, *to wit*: "Plaintiff [sic] is informed, and believes, and thereon alleges, that CPS has sufficient general and specific contacts with this district and, in particular, the events alleged herein so as both to subject Defendant CPS to personal jurisdiction in this judicial district and to make this Court a proper venue pursuant to 28 U.S.C. 1391(b)." *See* Comp. at para. 14. These generalizations are legally insufficient to meet the necessary requirements for pleading jurisdiction and warrant dismissal.

## POINT III.

### CPS DOES NOT HAVE THE REQUISITE MINIMUM CONTACTS WITH NEW YORK TO SUPPORT JURISDICTION.

The test for personal jurisdiction under the law of the Second Circuit has two steps. First, the court looks to personal jurisdiction law of the forum state and determines whether it is satisfied. Under the second step of the test for personal jurisdiction, if state law is found to confer personal jurisdiction over the defendant, the court must decide whether the exercise of personal jurisdiction comports with constitutional due process requirements. *See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003)*.

---

[4] Defendant assumes Plaintiffs claim general jurisdiction, and not specific jurisdiction, as they have not pled any purposeful availment by Defendant giving rise to the instant cause. If Plaintiffs make an assertion of specific jurisdiction in their opposition, Defendant reserves the right to address same in its reply.

There are two concepts of personal jurisdiction in the forum state, New York: general and specific, the latter known as "long-arm jurisdiction." *See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*.

"Where [general] jurisdiction is predicated upon the provisions of *CPLR 301*, there is no need to establish a connection between the cause of action in issue and the foreign defendant's business activities within the state, because the authority of the New York courts is based solely upon the fact that the defendant is 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'" *McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981). See also Nautilus Ins. Co. v. Adventure Outdoors, Inc., 247 F.R.D. 356, 358-59 (E.D.N.Y. 2007)* (state may exercise general personal "jurisdiction over any dispute involving the party" regardless of whether "plaintiff's cause of action . . . [arose] out of defendant's contacts with the forum state"). Specific jurisdiction, by contrast, applies where the defendant's continuing contacts with the forum state are not substantial but the contacts in the specific matter sued upon are significant, *i.e.*, "a State exercises personal jurisdiction over a defendant in a suit . . . arising out of or related to the defendant's contacts with the forum." *Burger King Corp., 471 U.S. at 473 n.15*.

In order for general jurisdiction to exist over a defendant corporation, that defendant must be found to be "doing business" in New York. *See Wiwa v. Royal Dutch Petroleum, Co., 226 F.3d 88, 96 (2d Cir. 2000)*. "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, *but with a fair measure of permanence and continuity*." *Id*. (internal citation and quotation marks omitted) (emphasis added).

In assessing whether a corporation's business is conducted "with a fair measure of permanence and continuity," the following non-dispositive factors among others are considered: "[1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New York; and [4] the presence of employees or agents in New York." *Li v. Hock, 371 Fed. App'x 171, 174 (2d Cir. 2010)* (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990))*.

A corporation will not be found to be "doing business" for purposes of jurisdiction under *CPLR 301* simply because it seeks investors or attempts to raise finances in New York; "if it were, then almost every company in the country would be subject to New York's jurisdiction." *Clarke v. Fonix Corp.*, 98-cv-6116, 1999 U.S.Dist. LEXIS 2143 (S.D.N.Y. 1999) (*citing Daniel v. American Board of Emergency Medicine*, 988 F.Supp. 127, 224 (W.D.N.Y. 1997); *Robbins v. Ring*, 9 Misc.2d 44, 166 N.Y.S.2d 483 (Sup. Ct. 1957)).

The fact that a defendant's employees attend conferences, trade shows or meetings with potential investors or financiers in New York, or even meet with plaintiff in New York, will also not confer jurisdiction under *CPLR 301. See Lane v. Vacation Charters, Ltd.*, 750 F.Supp. 120, 125 (S.D.N.Y. 1990); *Landoil Res. Corp.,* 918 F.2d at 1045 (2d Cir. 1990)(finding that thirteen business trips made by employees of the defendants to New York made sporadically during an eighteen month period were "insufficient to establish the systematic and continuous presence within the state that New York law requires); *Hoffritz for Cutlery Inc. v. Amajac Ltd.*, 763 F.2d 55, 57-58 (2d Cir. 1985)(finding that fifty-four visits to New York to discuss business with plaintiff was insufficient to confer jurisdiction); *Avecmedia Inc. v. Gottschalk*, No. 03-cv-7831, 2004 U.S. Dist. LEXIS 13228 (S.D.N.Y. July 14, 2004)(holding that the defendants' presence at a meeting in New York, in addition to telephone and e-mail communications to New York

plaintiffs were insufficient to satisfy *CPLR 301)*; *Aquascutum of London Inc. v. S.S. American Champion*, 426 F.2d 205, 211-12 (2d Cir. 1970)(finding that visits to solicit business in New York "every few months" insufficient to sustain jurisdiction); *New World Capital Corp. v. Poole Truck Line Inc.*, 612 F.Supp. 166, 172 (S.D.N.Y. 1985)(eight visits over four years insufficient); *Savoleo v. Couples Hotel*, 136 A.D.2d 692, 693, 524 N.Y.S.2d 52 (2d Dep't 1988) ("occasional" business trips to New York insufficient); *Pacamor Bearings Inc. v. Molon Motors & Coil Inc.*, 102 A.D.2d 355, 357-58, 477 N.Y.S.2d 856, 857 (3d Dep't 1984)(nine trips to New York by sales managers over twenty months insufficient).

Further, New York courts have consistently held that a corporation will not be found to be "doing business" in New York merely because its shares of stocks are listed on a New York based stock exchange. *See, e.g., Clarke* at *19; *Gilson v. Pittsburgh Forgings Co.*, 284 F.Supp. 569, 571 (S.D.N.Y. 1968) (*citing Grossman v. Sapphire Petroleums Limited*, 195 N.Y.S.2d 851 (Sup. Ct. 1959); *Robbins v. Ring*, 9 Misc.2d 44, 166 N.Y.S.2d 483 (Sup. Ct. 1957) ("to hold otherwise would render almost every corporation [listing its shares in New York] subject to the jurisdiction of New York, without any other jurisdictional requirements"); *Joseph Walker & Sons v. Lehigh Coal & Navigation Co.*, 8 Misc.2d 1005, 167 N.Y.S.2d 632 (Sup. Ct. 1957).

Here, defendant is not "doing business" in New York with the requisite permanence and continuity. Defendant does not have a New York office, does not specifically target New York in terms of advertising or sales, does not have bank accounts or property in New York and does not have any employees or business agents in New York. *See* Declaration of L. Li. Defendant's sole contacts with New York between 2006 and 2011 were seven (7) distinct, brief trips to attend trade conferences and meet with potential investors. *See id.*

Without the requisite minimum contacts within New York, this Court lacks jurisdiction over Defendant. *Royal & Sun Alliance v. Resolve Towing & Salvage*, 2000 U.S. Dist. LEXIS 17575; 2001 AMC 718 (SDNY; Owen, J.).

## **CONCLUSION.**

For all of the foregoing reasons, Defendant China Precision Steel Inc. respectfully requests that its motion to dismiss be granted without leave to re-plead being given to Plaintiffs.

Dated: Morristown, New Jersey
January 23, 2014

Respectfully submitted,

By: _____
John M. Deitch, Esq.
**COUGHLIN DUFFY LLP**
350 Mt. Kemble Ave., P.O. Box 1917
Morristown, New Jersey 07962
(973) 267-0058
*Attorneys for Defendant,*
*China Precision Steel Inc.*